# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ALEXANDER STONE KRISTENSEN, a minor by next friend, SUSAN LEIGH KRISTENSEN, and KAIA VICTORIA KRISTENSEN, a minor by next friend, SUSAN LEIGH KRISTENSEN<br>                                       *Plaintiffs,*<br><br>                    v.<br><br>WILLIAM DAVID SPOTNITZ and DENISE CONSTANCE SCHAIN<br>                                       *Defendants.* | NO. 3:09–cv–00084<br><br><u>MEMORANDUM OPINION</u><br><br>JUDGE NORMAN K. MOON |

Pending before the Court in this personal injury action is an assortment of pre-trial motions. The motions still outstanding, in order of docket appearance, include: (1) Defendants' Motion in Limine to Exclude Subsequent Remedial Measures (docket no. 61); (2) Defendants' Motion in Limine to Exclude any Injuries or Symptoms of Other Persons or Animals (docket no. 148); (3) Defendants' Motion in Limine to Exclude Any Evidence Regarding the Plaintiffs' Alleged Emotional Distress (docket no. 149); (4) Defendants' Motion in Limine to Exclude Any Evidence Relating to the Fact that Defendants are Doctors (docket no. 150); (5) Defendants' Motion in Limine to Exclude Evidence of Damage to Furniture and Personal Property (docket no. 152); (6) Defendants' Motion in Limine to Exclude Evidence or Reference to "Toxic" Mold, Mycotoxins, or Volatile Organic Compounds (docket no. 153); (7) Plaintiffs' Motion to Exclude or Limit the Expert Testimony of Defense Experts Drs. Phillips and Cheung (docket no. 167); and (8) Plaintiffs' Motion for Leave to File a Motion in Limine After the Pretrial Order Deadline (docket no. 180), which includes an associated Proposed Motion to Strike the Supplemental

1

Expert Reports of Defense Experts Drs. Phillips and Cheung. The Court held a hearing on these matters on September 29, 2011 in Charlottesville. A trial by jury is scheduled to begin October 3, 2011.

## I. BACKGROUND

This is a personal injury action arising out of alleged mold contamination of a residence owned by Defendants, but formerly occupied by Plaintiffs. The Plaintiffs, Alexander Stone Kristensen ("Alex") and Kaia Victoria Kristensen ("Kaia"), are the minor children of Stein Kristensen ("Stein") and Susan Leigh Kristensen ("Susan," and collectively, the "Kristensens"). Plaintiffs brought two separate but closely related actions for damages in the Circuit Court for Albemarle County, Virginia. After removal to this Court, the cases were consolidated.[1] (docket no. 28).

As alleged, the facts are as follows: the Kristensens entered into an oral agreement to "house sit" for Defendants at Defendants' Charlottesville home beginning in August 2000, and lasting for an indefinite period of time. Defendants had left the home and moved to Florida, where they established residence and currently reside. Under the terms of the agreement, in exchange for rent-free occupancy, the Kristensens would pay the utilities, provide security by their presence, and advise Defendants of any problems that might arise with the residence.

During the course of the Kristensens' occupancy, they experienced several leaks in the roof of the house, most significantly surrounding a skylight. Plaintiffs' father informed the Defendants about the leaks, and although Defendants knew or should have known that repairing the leaks, or allowing the Kristensens to repair them, was necessary to maintain a safe and habitable living environment, the Defendants failed to do so. Due to the resulting damp

---

[1] Civil actions nos. 3:09–cv–00084 and 3:09–cv–00085.

conditions, the house became infested with dangerous molds. After a long period of exposure to such molds, Plaintiffs fell ill and suffered serious injury.

## II. APPLICABLE LAW

Most of Defendants' motions proceed from relevance objections, although one Motion in Limine (docket no. 149) is more significantly grounded in substantive Virginia law regarding emotional distress claims. Plaintiffs' Motions (docket nos. 167 and 180) arise out of their protests against certain expert witnesses offered by Defendants. When it comes to Defendants' relevance objections, Courts begin evidentiary analyses with the idea that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution[,] . . . by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court . . . ." Fed. R. Evid. 402. "Relevant evidence" is liberally defined to include evidence which has "any tendency to make the existence of any [material fact] more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993). Nevertheless, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. I address each motion in turn.

## III. DISCUSSION

### A. Defendants' Motion to Exclude Evidence of Subsequent Remedial Measures (docket no. 61)

Pursuant to Rules 403 and 407 of the Federal Rules of Evidence, Defendants moved the Court to exclude any testimony from Darren Giacolome ("Giacolome"), as well as any other evidence of subsequent remedial measures undertaken with respect to the home. (Defs.' Mot. at 1). The Court issued a ruling denying the foregoing Motion—at least as it pertained to

3

Giacolome—on June 3, 2011 (docket no. 91). In the accompanying Memorandum Opinion (docket no. 90), I specifically declared that the use of Giacolome's testimony would be permissible to show the feasibility of precautionary measures, if controverted by Defendants, and that such testimony would be relevant, and not unduly prejudicial. Mem. Op. at 9–10. Since that time, however, Defendants have renewed their objection to the introduction of any evidence of other subsequent remedial measures.

At the September 29 hearing, Defendants noted their belief that Plaintiffs would seek to call Bert Holladay ("Holladay") to testify that he repaired and painted troubled parts of the home in the months after the Plaintiffs vacated the premises. Defendants contend that such testimony would be offered to show that Defendants had knowledge of the alleged leak in the skylight, and that they could have repaired it. Such testimony, according to Defendants, is prohibited by Rule 407. In response, Plaintiffs contend that the testimony is admissible as an exception to Rule 407. Specifically, Plaintiffs argue that if the Defendants refuse to concede that the leak even occurred[2] or that the leak was repairable, the subsequent remedial measures testimony can be used to impeach credibility.

I have considered the parties' arguments and the authorities cited in their previous briefings, and I will take the Motion under advisement. I will defer ruling, however, unless and until Plaintiffs seek to introduce such evidence at trial, either in their own case or in rebuttal. I note that pursuant to Rule 407, for any such evidence to be admissible, it would have to be in the nature of an impeachment or a rebuttal to Defendants' controversion of "ownership, control, or feasibility of precautionary measures . . . ." Fed. R. Evid. 407.

---

[2] Plaintiffs argue that Defendants deny that any leaks occurred. From the argument at the hearing, it appears that Defendants do acknowledge that a leak occurred, at least at some time, but Defendants dispute that they knew that the leak occurred during the course of the Plaintiffs' occupancy.

4

### B. Defendants' Motion to Exclude Any Injuries or Symptoms of Other Persons or Animals (docket no. 148)

Defendants next seek to exclude evidence "of any injuries or symptoms of other persons or animals from the trial . . . ." Defs.' Mot. at 1. Plaintiffs, however, have withdrawn their attempt to introduce any such evidence, except the Plaintiffs' parents' alleged symptoms, personal injuries, and damages. To that end, Defendants only seek to exclude expert reports provided by Dr. Joseph Vilseck ("Vilseck") and Dr. Richard Lipsey, which both discuss or allude to the contemporaneous illness among the four family members who, at all times relevant to the instant case, lived under the same roof.

Defendants assert three reasons to justify exclusion of such evidence: (1) the claims of Stein and Susan Kristensen have been resolved in Defendants' favor in Albemarle County Circuit Court; (2) the parents' injuries or damages are irrelevant to prove the alleged exposure; and (3) even if the evidence is relevant, its probative value is minimal, and its prejudicial value would be high. For the reasons mentioned at the September 29, 2011 hearing, I will deny Defendants' Motion.

### C. Defendants' Motion to Exclude Evidence of Plaintiffs' Emotional Distress (docket no. 149)

Defendants also seek to preclude the introduction of any evidence relating to the Plaintiffs' alleged emotional distress. Defendants believe Plaintiffs will seek to introduce such evidence through the testimony of Dr. Anthony Poehailos ("Poehailos"), Alex's treating psychiatrist, and Dr. Andrew Elgort, a licensed clinical psychologist who had treated Kaia. In their brief, Plaintiffs note that they "withdraw Dr. Elgort's proposed emotional distress opinions for [Kaia], and will rely only upon physically related emotional distress for [Kaia]." Pls. Mem.

5

at 5. Defendants' protests regarding Dr. Elgort are therefore moot, but I must still address the proposed testimony of Poehailos.

Virginia adheres to a general rule that damages for emotional distress are "not recoverable unless they result directly from tortuously caused physical injury." *Naccash v. Burger*, 290 S.E.2d 825, 830 (Va. 1982). Indeed, the Virginia Supreme Court has "held, for well over a century, that mental anguish may be inferred from bodily injury . . . ." *Kondaurov v. Kerdasha*, 629 S.E.2d 181, 186 (Va. 2006) (citing *Norfolk & W. Ry. Co. v. Marpole*, 34 S.E. 462, 464 (1899)). That said, "[a]n event may have more than one proximate cause, and, under certain circumstances, a proximate cause may also be a superseding cause that severs the link of proximate causation between the initial negligent act and the resulting harm, thereby relieving the initial tortfeasor of liability." *Williams v. Joynes*, 677 S.E.2d 261, 264 (Va. 2009).

While Plaintiffs might be able to recover for emotional harms stemming from physical injuries to themselves, I will not allow Plaintiffs to introduce evidence pertaining to the alleged distressing family environment, or the Plaintiffs' parents' subsequent divorce, or how such situations allegedly contributed to the emotional distress suffered by Plaintiffs. In short, I find such evidence to be too far removed from any injury allegedly attributable to Defendants; Poehailos's testimony on this point will be limited to that which is attributable to the physical injuries Plaintiffs suffered, allegedly due to Defendants' negligence. Defendants' Motion is therefore granted in part and denied in part.

### D. Defendants' Motion to Exclude Evidence that Defendants Are Doctors (docket no. 150)

Defendants next seek to exclude any evidence of, including any reference to, to the fact that both Defendants are medical doctors, had medical training, education, or licensure. Although both Defendants do have medical degrees and practice as physicians, Defendants argue

6

that their professional titles are irrelevant to the case, and that no heightened standard of care stems from Defendants' respective professions. Moreover, Defendants argue that any such evidence would be highly prejudicial and confuse the issues.

In addition to seeking to exclude this evidence, Defendants also seek to preclude Plaintiffs from eliciting any testimony from Defendants "regarding mold, the state of the knowledge in the medical community of mold, the relationship between mold and the [P]laintiff's alleged injuries." Defs.' Mot. at 3. Defendants argue that it is improper for Plaintiffs to ask such questions because Defendants have neither been sued in their professional capacities nor designated as expert witnesses in the litigation in accordance with applicable Federal Rules of Civil Procedure. Defendants argue that because Plaintiffs have failed to disclose Defendants as potential experts, Plaintiffs may not seek to elicit expert opinion testimony from Defendants at trial.

At the September 29 hearing, Plaintiffs affirmed that only an ordinary standard of care applies to the case, and assured the Court that Plaintiffs do not seek to solicit any medical opinions from Defendants. Because I see no undue prejudice in Plaintiffs referring to Defendants as "doctors," and because I am satisfied that Plaintiffs' use of Defendants' shared professional title will not be for any improper means, e.g., soliciting Defendants' medical opinions regarding the health effects of mold, I will deny Defendants' Motion.

### E. Defendants' Motion to Exclude Evidence of Damage to Furniture & Personal Property (docket no. 152)

Defendants next object to Plaintiffs introducing any evidence relating to the destruction, removal, or contamination of the Kristensens' personal property. In support of their argument, Defendants again cite Rules 401 and 403 of the Federal Rules of Evidence, arguing first that such evidence irrelevant, and second that any relevance is substantially outweighed by its

7

prejudicial value, confusion of the issues, tendency to mislead the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Plaintiffs respond first by noting that they do not intend to present any such evidence in relation to Kaia's alleged injuries, mooting Defendants' Motion as it relates to her. When it comes to Alex, Plaintiffs argue that the loss of personal property in the home is relevant because it tends to support Plaintiffs' allegations of emotional distress. At the September 29 hearing, Plaintiffs concluded their argument on this matter by asking that I closely read and consider *Kondaurov v. Kerdasha*, 629 S.E.2d 181 (Va. 2006).

I have read *Kondaurov*, and I cannot agree that it supports Plaintiffs' position. While Plaintiffs "are entitled to show the totality of the circumstances of the [circumstances surrounding their alleged injury,]" *id.* at 186, it is also true that "[d]amages for [injury to, or loss of, a plaintiff's personal property, as a result of a defendant's negligence] are confined to the diminution in the value of the property resulting from the [alleged injury] . . . ." *Id.* (citing *White Consol. Indus., Inc. v. Swiney*, 376 S.E.2d 283, 287 (Va. 1989).

In much the same way that the court in *Kondaurov* permitted the plaintiff to introduce evidence that her dog was thrown from her vehicle in order to show the violence and severity of the collision, Plaintiffs in the instant case are free to present relevant evidence pertaining to the damage to furniture and other property in an effort to show the extent and severity of mold damage in the house. Plaintiffs may not, however, introduce such evidence to corroborate any alleged emotional distress suffered by Plaintiffs, as "owners of personal property destroyed by a defendant's negligence . . . [are] not entitled to recover any sentimental value attached to it by the owners or any peculiar value which they may have attached to the property by reason of association or the like." *Kondaurov*, 629 S.E.2d at 187 (quoting *C & O Ry. Co. v. May*, 92 S.E.

8

801, 803 (Va. 1917)). I will not permit Plaintiffs to assert that their emotional distress arises from their concern for, or the loss of, the family's personal property. Because I allow the evidence for only a limited purpose, Defendants' Motion is therefore granted in part and denied in part.

## F. Defendants' Motion in Limine to Exclude Evidence or Reference to "Toxic" Mold, Mycotoxins, or Volatile Organic Compounds
**(docket no. 153)**

In their next Motion, Defendants seek to exclude evidence of, and even the very mention of, "toxic" mold, mycotoxins, or volatile organic compounds (VOCs), claiming that such evidence or references would be irrelevant and highly prejudicial, outweighing any probative value. The mycotoxins issue has been mooted by prior agreement of the parties, but I consider the remaining relevant arguments.

Notably, also, at the September 29 hearing, Defendants raised the argument that Plaintiffs have not designated the various mold testing and laboratory reports as exhibits, and must therefore refrain from referring to specific mold findings in the home. Plaintiffs responded with the fact that Defendants designated the reports as exhibits themselves; Defendants then stated their intention to withdraw those exhibits. I defer ruling on the admissibility of specific findings from those reports, but as I noted at the hearing, I instruct the parties not to refer to specific findings in their opening statements. I now consider the appropriateness of referring to "toxic" mold and VOCs.

### 1. "Toxic" Mold

Defendants assert simply that there is inadequate foundation to use the "toxic" designator when referring to the mold in the subject residence. Defs.' Mot. at 2. In support of this assertion, Defendants contend that "the only means of suffering from 'toxic' mold exposure is

9

through exposure to mycotoxins." *Id.* Because Plaintiffs have withdrawn their efforts to refer to "mycotoxins," then, Defendants argue that it is improper to refer to "toxic" mold. Defendants, however, have cited no authority for that proposition. Plaintiffs argue, to the contrary, that "toxic mold" is merely a term broadly used by experts to describe molds that cause adverse human health effects.

I find Plaintiffs' argument on this matter to be persuasive. No dictionary would inform the Court that the use of "toxic" is appropriate, if, and only if, the presence of mycotoxins has been documented and confirmed. Moreover, excluding *any* reference to "toxic" mold would restrict experts from testifying even to "toxic" mold generally as a topic with which they are familiar, even if such mold is not proven to have existed in the home.

I also find that the "toxic" modifier is not unduly prejudicial enough to warrant exclusion under Rule 403. Defendants argue that "[a]ny reference to the mold as 'toxic' suggests that the mold is harmful in a different way and on a level different from one of a mere alleged allergic response" and "the jury will be misled as to the actual cause of the alleged injuries . . . ." Defs.' Mot. at 4. Again, however, the language of Rule 403 is tilted strongly in favor of admission, and exclusion is only proper thereunder when prejudice, undue delay, or similar concerns "substantially outweigh" probative value. Fed. R. Evid. 403. I find little reason to think that the use of the word "toxic" would inflame the jury in an emotional or otherwise improper way.

### 2. Volatile Organic Compounds (VOCs)

Defendants proceed to argue that any testimony regarding the presence of VOCs is factually unsupported and therefore irrelevant, and even if such evidence is deemed relevant, it should be excluded as unduly prejudicial.

I have already found that a sufficient factual basis—the presence of a musty odor—exists for Dr. Vance to testify to the presence of VOCs. *See* Mem. Op. at 9–10 (docket no. 177) (noting that Defendants do not challenge the assertion that a musty odor likely signifies the presence of VOCs, although Defendants maintain that the amount of VOCs required to produce a noticeable smell is much smaller than the amount required to produce a danger to human health). The only pertinent question remaining, then, is whether allowing such testimony warrants exclusion under Rule 403. Defendants argue that it does, but I cannot agree.

In sum, while noting that the argument to exclude mycotoxin evidence has been mooted, I find there to be little merit in Defendants' Motion, especially when viewed in light of the earlier *Daubert* ruling. The Motion is therefore denied, although as I mentioned above, I instruct the parties to refrain from referring to specific results of mold testing done at the home in their opening statements.

### G. Plaintiffs' Motion to Exclude or Limit the Testimony of Defense Experts Drs. Phillips and Cheung
**(docket no. 167)**

Plaintiffs have moved the Court to exclude, or alternatively, limit, the expert testimony of Phillips and Cheung. The essence of the Motion is that neither Phillips nor Heung filed supplemental reports to address points raised in Plaintiffs' supplemental expert report from Vilseck. Plaintiffs contend that because Cheung and Phillips did not file supplemental reports in accordance with the Pretrial Order, none of the information contained in Vilseck's final report was, or could have been, addressed by Cheung or Phillips when they composed their earlier reports. Therefore, according to Plaintiffs, Cheung and Phillips must be prohibited from offering opinions regarding Vilseck's evaluation, testing, and lab work. Plaintiffs also ask that Cheung

11

be prohibited from offering any testimony in industrial hygiene, as they allege he is unqualified to offer any such testimony.

Before filing a response brief, Defendants filed two companion Supplemental Expert Disclosures for Cheung and Phillips. (docket nos. 175 and 176, respectively). In each, Defendants noted their belief that the opinions contained therein had already been disclosed, but were filing the supplemental disclosures "out of an abundance of caution and to comply with the Federal Rules['] spirit of complete disclosure." Defendants then filed a Response (docket no. 189) arguing that Dr. Phillips and Dr. Cheung's Opinions were timely, and that Dr. Cheung is qualified to render opinions in the case, and he has used reliable methods to reach those opinions.

Given that Defendants have indeed filed the supplemental reports, Plaintiffs' argument can be distilled to read: (1) Defendants' supplemental filings were untimely and must be excluded, so therefore (2) Cheung and Phillips cannot be permitted to offer any opinion testimony about Vilseck's conclusions. Moreover, (3) even if Cheung and Phillips are permitted to offer the limited testimony contained in their initial reports, Cheung is unfit to testify to principles of industrial hygiene, and is specifically unqualified to criticize Dr. Vance.

My consideration of the briefs and the argument at the hearing leads me to conclude that Cheung and Phillips must not be permitted to rely on their supplemental reports, but Cheung's and Phillips's original reports offer substantial grounds from which they could proceed to critique Vilseck's conclusions at trial. Moreover, I am not convinced that Cheung is unqualified to offer opinion testimony pertaining to the field of industrial hygiene. I will therefore grant Plaintiffs' Motion in part and deny it in part.

### 1. Compliance with Pretrial Order

I conclude that Defendants have not complied with the dates set forth in the Pretrial Order for completing discovery—a conclusion that Defendants have not seriously disputed. The supplemental reports filed by Cheung and Phillips must therefore not inform their trial testimony. To argue that the latest supplemental disclosures were filed "out of an abundance of caution" admits that I need not consider them. I note that the conclusion that Defendants' experts Cheung and Phillips are bound by their initial reports effectively moots Plaintiffs' Motion for Leave to File a Motion in Limine After the Deadline (docket no. 180).

### 2. Defense Experts' Reliance on Their Initial Reports

If Cheung and Phillips are prohibited from testifying to opinions contained only in their later-filed supplemental reports, then I must decide to what extent, if at all, Cheung and Phillips can render opinions about Vilseck's diagnosis and evaluation just by relying on their original reports. A review of the supplemental expert reports filed by Cheung and Phillips reveals that both reports are quite brief (four substantive paragraphs from Cheung, and three paragraphs from Phillips). By contrast, Cheung's original expert report (docket no. 122 Ex. 7) and Phillips's original report (docket no. 74 Ex. 1) both comprise many pages of medical conclusions, with commensurately many critical references to Vilseck's initial conclusions. Cheung and Phillips cite Vilseck's initial expert report and deposition as the bases for their criticism.

Defendants argue that the supplemental disclosures I have already excluded merely restate each expert's earlier opinion that Vilseck's work was inadequate. To the extent that the supplemental disclosures are truly duplicative of Defendants' experts' earlier-formed conclusions, I agree that there can be no associated prejudice against Plaintiffs. That said, because Vilseck's supplemental reports came after the Defendants' experts' initial reports, not all

of the conclusions found in Defendants' experts' supplemental reports can be said to simply reiterate their earlier conclusions.

I will allow Cheung and Phillips to testify to their criticisms of Vilseck to the extent those criticisms were disclosed in each of their original reports, but I will not allow either Cheung or Phillips to offer any opinions mentioned solely in their supplemental disclosures. Unfortunately, this outcome will require careful monitoring from the parties and from Court, because, as we saw during the September 13, 2011 hearing, Defendants' experts might—advertently or inadvertently—stray into areas that Plaintiffs find objectionable based on my restriction. Nevertheless, it appears that both Cheung and Phillips, even without considering Vilseck's June, 2011 deposition, and also without relying on their opinions set forth in their supplemental reports, have nonetheless established an adequate basis from which to criticize Vilseck's methodology and conclusions. Cheung and Phillips may both testify, but both are bound by the four corners of their original reports.

### 3. Cheung's Consideration of Relevant Variables

Plaintiffs argue that even if the Court allows Cheung to testify only upon his expert opinions expressed in his May 6, 2011 report, that Cheung must nonetheless be prevented from testifying regarding Vilseck because Cheung did not "consider all relevant variables in this case . . . ." Pls.' Mem. at 4. Plaintiffs cite *Waytec Elecs. Corp. v. Rohm and Haas Elec. Materials, LLC*, 459 F. Supp. 2d 480 (W.D. Va. 2006) for the proposition that an expert's failure to consider relevant variables makes the expert's opinion inherently unreliable. Plaintiffs claim that Cheung's failure to address or otherwise consider the testing performed by Vilseck is fatal because that testing is the "ultimate variable to address" under the circumstances. Pls.' Mem. at 5.

14

Defendants respond that the opinion of a competing expert is not a relevant variable for Cheung to have considered. Defendants insist, on the other hand, that Cheung's application of the Bradford Hill criteria for assessing causation in infectious agents satisfies Plaintiffs' demands, and then some. The Bradford Hill criteria include the following variables: temporality, strength of association, replicability, dose-response relationship, cessation of exposure, alternatives, and consistency (defined in two different ways). As the Court saw in Defendants' *Daubert* Motion (docket no. 121) seeking to exclude the testimony of Vilseck and others, Defendants argue that it is Vilseck's, and not Cheung's, testimony that should be the proper subject of exclusion because Vilseck fails to consider the appropriate variables.

While the Court denied Defendants' *Daubert* Motion to exclude Vilseck's testimony, it seems that the Bradford Hill criteria are more widely accepted in toxic exposure causation analyses than the variable set that Vilseck offers. I remain convinced, however, that neither method should be excluded under Rule 702 of the Federal Rules of Evidence. Exactly how important one or more variables that Cheung or Vilseck allegedly failed to consider can be addressed at voir dire, or through cross-examination and other traditional advocacy techniques.

### 4. Cheung's Industrial Hygiene Qualifications

Finally, Plaintiffs seek to prevent Cheung from offering opinion testimony specifically criticizing Plaintiffs' expert Dr. Leonard Vance ("Vance") and from speaking about the industrial hygiene sampling and analysis more generally, on the grounds that Cheung is unqualified to testify regarding the principles of industrial hygiene—Vance's specialty. Plaintiffs cite a litany of reasons which they claim supports their conclusion that the Court should exclude Cheung's testimony in this area. *See* Pls.' Mem. at 5–7. In sum, Plaintiffs

contend that Cheung is improperly seeking to bill himself as an "all-in-one" expert on any and all issues relating to mold. *Id.* at 7.

In response, Defendants recite Cheung's impressive graduate and post-graduate training and his eighteen years of experience practicing in the field of occupational and environmental medicine. Defs.' Resp. at 6–7. Most specifically, Defendants cite Cheung's consultative services to companies and individuals with occupation and environmental illness and injuries, including his service as lead investigator for large federal government studies on epidemiology and health hazards at government facilities. *Id*. at 7. Defendants respond to Plaintiffs' criticism that Cheung "could not cite the Virginia professional standards for mold remediation[,]" Pls.' Mem. at 6, by saying that such regulations have no bearing on the case. Defs.' Resp. at 7–8.

While it is true that Cheung is not an industrial hygienist per se, it seems that his expertise substantially overlaps with the field. It is clear from Plaintiffs' own brief that Cheung, at the very least, works in close connection with industrial hygienists, and it seems reasonable to conclude that he frequently considers the opinions that such industrial hygienists offer in reaching his own conclusions. That sort of reference point and connection to the field of industrial hygiene would seem to be sufficient to allow Cheung to offer his opinions at trial. To the extent that Plaintiffs believe Cheung is unqualified to offer opinions about general principles of industrial hygiene, or particular criticisms of Vance's conclusions, we will address those issues at voir dire.

16

### H. Plaintiffs' Motion for Leave to File a Motion in Limine
### After the Pretrial Order Deadline
### (docket no. 180)

As noted above, my conclusion that Defendants' experts Cheung and Phillips are bound by their initial reports effectively moots Plaintiffs' Motion for Leave, through which Plaintiffs sought to strike the supplemental reports filed by Cheung and Phillips.

## IV. CONCLUSIONS

For the reasons herein, I will defer ruling on Defendants' Motion to Exclude Evidence of Subsequent Remedial Measures (docket no. 61), unless and until Plaintiffs attempt to introduce such evidence. I will deny Defendants' Motion to Exclude Any Injuries or Symptoms of Other Persons or Animals (docket no. 148) for the reasons noted at the hearing. I will grant in part and deny in part Defendants' Motion to Exclude Evidence of Plaintiffs' Emotional Distress (docket no. 149), as I will allow Plaintiffs to introduce evidence of emotional distress, but only such evidence that can be directly connected to their alleged physical injuries. I will deny Defendants' Motion to Exclude Evidence that Defendants Are Doctors (docket no. 150). I will grant in part and deny in part Defendants' Motion to Exclude Evidence of Damage to Furniture and Personal Property (docket no. 152), allowing Plaintiffs to introduce such evidence for the limited purpose of showing the nature and extent of alleged mold damage in the home. I will deny Defendants' Motion in Limine to Exclude Evidence or Reference to "Toxic" Mold, Mycotoxins, or VOCs (docket no. 153), but I instruct the parties to refrain from referring to specific findings contained in the mold testing reports in their opening statements. I will grant in part and deny in part Plaintiffs' Motion to Exclude or Limit the Testimony of Drs. Phillips and Cheung (docket no. 167), which effectively moots Plaintiffs' Motion for Leave to File a Motion in Limine After the Deadline (docket no. 180). An accompanying Order will follow.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this __30th__ day of September, 2011.

*/s/ Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE